JACOB RUEFFER and Another, Individually and on Behalf of All Others Similarly Situated, Respondents, v. DEPARTMENT OF AGRICULTURE AND MARKETS OF THE STATE OF NEW YORK and Others, Appellants.*

Third Department, June 22, 1938,

* Affg. 166 Misc. 430. See, also, 164 Misc. 803.

*John J. Bennett, Jr., Attorney-General; Henry Epstein, Solicitor-General,* and *Milo R. Kniffen, Counsel to the Department of Agriculture and Markets* [*Robert G. Blabey, Assistant Counsel,* of counsel], for the appellants.

*Harry S. Travis,* for the respondents.

*McLanahan, Merritt & Ingraham* [*Robert R. Bruce* of counsel; *Walter Gordon Merritt* with him on the brief], for the New York State Retail Solid Fuel Merchants' Association, Inc., as *amicus curiæ.*

PER CURIAM. Appeal from a judgment which grants to plaintiffs, and those similarly situated, an injunction restraining defendants from enforcing or attempting to enforce any of the provisions of article 16-A of the Agriculture and Markets Law in restraint of or burdening the interstate transportation and hauling of coal by trucks from Pennsylvania into and through the State of New York, in which business plaintiffs and others are engaged. In compliance with the request of plaintiffs' competitors, who sell coal drawn by railroad, one or more of their employees have been appointed by defendants as deputy inspectors of weights and they have made more than forty arrests for claimed violations of the statute. These specially appointed inspectors receive no salary from the State but only from their private employers.

The decision and judgment do not involve the constitutionality of the article but only determine that its provisions do not justify the action of defendant Department of Agriculture and Markets and its inspectors.

Defendants purported to act under the article as amended by chapter 579 of the Laws of 1937, section 8 of which provides: " If any clause, sentence, paragraph or part of such sections, as amended or added, as the case may be, by this act shall for any reason be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair or invalidate the remainder thereof, but shall be confined in its operation to the clause, sentence, paragraph, or part thereof, directly involved in the controversy in which such judgment shall have been rendered. *No provision of such sections shall apply or be construed to apply to foreign or interstate commerce, except in so far as the same may be effective pursuant to the United States Constitution and to the laws of the United States enacted pursuant hereto.*"

The last sentence of the quotation, italicised by this draftsman, clearly shows the legislative intent. Thereunder its provisions apply only to interstate commerce in the event enabling statutes were enacted by the Congress of the United States as the article contains provisions affecting interstate commerce. This was but recognition by the New York Legislature that it involved one of the powers granted Congress by section 8 of article I of the Federal Constitution.

The judgment should be affirmed.

HILL, P. J., CRAPSER and HEFFERNAN, JJ., concur; RHODES, J., dissents, with an opinion in which BLISS, J., concurs.

RHODES, J. (dissenting). The act in question purports to be an enactment " in relation to the weighing and selling of coal, coke and charcoal." It provides that coal and coke shall be sold by weight, provides for the weighing of coal, requires weight tickets and prohibits the sale of any coal without such weighing and the delivery of such weight tickets. Vehicles used in transporting coal or coke are to be plainly lettered with the name of the owner and also with the words " Coal and/or Coke." Every driver of a truck bringing coal into the State is required to proceed forthwith to the nearest available scales suitable for weighing the commodity, and such driver is required to make and sign a certificate of origin showing the kind, size and weight of the coal, the name and address of the person claiming ownership and of the driver and the State registration number of the truck, with the name and address of the person to whom said coal is to be delivered. Such certificate of origin is also to be signed by the owner or operator of the place of production or storage from which the transportation originated and is to be furnished the weighmaster weighing the truck and coal.

The last sentence of section 8 of the act provides: " No provision of such sections shall apply or be construed to apply to foreign or interstate commerce, except in so far as the same may be effective *pursuant* to the United States Constitution and to the laws of the United States enacted *pursuant* hereto."

It is conceded that plaintiffs are engaged in trucking coal solely in interstate commerce and that an enabling act has not been enacted by Congress.

It is claimed that the act by its terms is not to have any application as to interstate commerce until permissive and enabling acts are passed by Congress. The theory apparently is that because of the exclusive control of the Federal government over interstate commerce the State is powerless to exercise any control as to such commerce in the absence of permissive legislation by Congress. However, this argument overlooks the fact that in the absence of

permissive enactment by Congress, the State in the exercise of its police power may pass reasonable and non-discriminating laws for the inspection of articles which are properly the subject of inspection, although such laws incidentally affect interstate or foreign commerce, so long as such State laws do not unduly burden foreign or interstate commerce.

The act here in question does not attempt to prohibit importation, nor to impose a tax or toll thereon, but it is in the nature of an inspection law, for an inspection law has been defined as "something which can be accomplished by looking at or weighing or measuring the thing to be inspected, or applying to it at once some crucial test." (*People* v. *Compagnie Gen. Transatlantique*, 107 U. S. 59, 62. See, also, *Mintz* v. *Baldwin*, 289 id. 346.)

Whenever inspection laws act on the subject before it becomes an article of commerce, they are confessedly valid and also when, although operating on articles brought from one State into another, they provide for inspection in the exercise of that power of self-protection commonly called the police power. (*Patapsco Guano Co.* v. *North Carolina Board of Agriculture*, 171 U. S. 345.)

The act does not appear to be unreasonable or unduly burdensome to interstate commerce. The cases on this subject are so numerous that it is practically impossible to refer to them all, but see *Kelly* v. *Washington* (302 U. S. 1); *South Carolina State Highway Dept.* v. *Barnwell Bros.* (303 id. 177); *New Mexico ex rel. McLean & Co.* v. *Denver & Rio Grande R. R. Co.* (203 id. 38); *Pure Oil Co.* v. *Minnesota* (248 id. 158).

Since there is a field permitting the States under the police power to pass inspection, quarantine and similar laws without permissive act by Congress, it cannot be said that the act here in question is not presently operative; by its terms it is operative "in so far as the same may be effective pursuant to the United States Constitution."

The constitutionality of the act is not challenged and, therefore, our task is simply to determine the meaning of the statute. If the Legislature intended that it should have no application until Congress should enact permissive legislation, such intent could easily have been expressed in clear and direct language, but it will hardly be said that such intent is easily deducible from the language used.

The statute should be declared as having present application and validity and judgment to the contrary should be reversed and judgment granted in favor of the defendants.

Bliss, J., concurs.

Judgment affirmed, with costs.